

# STATE OF TENNESSEE
## Tre Hargett, Secretary of State
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

PRUDENTIAL INS. COMPANY OF AMERICA
AKA/POE: PRUDENTIAL LEGAL TEAM
2101 WELSH RD
DRESHER, PA  19025-5000

08/25/2016

RE: BARBARA BREEDLOVE

VS: PRUDENTIAL INS. COMPANY


RECEIVED AUG 3 0 2016 LAW DEPARTMENT PA

## Notice of Service

The enclosed process, notice or demand is hereby officially served upon you by the Tennessee Secretary of State pursuant to Tennessee law. Please refer to the process, notice or demand for details concerning the legal matter. If you have any questions, please contact the clerk of the court that issued the process, notice or demand.

The process, notice or demand may have a court date and time that you must appear to defend yourself or the number of days from the date of service by which you are required to file an answer. Failure to appear in court at the time specified or failure to file an answer in the given time could result in a default judgement being rendered against you for relief sought in the lawsuit.

The Secretary's office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Tre Hargett
Secretary of State

Enclosures:  Original Documents

### DOCUMENT INFORMATION
SOS Summons # :  03289016
Case #:           43864
Certified #:      70150640000485130325

| BARBARA BREEDLOVE | Vs. | PRUDENTIAL INSURANCE CO |
|---|---|---|

| Serve On: | PRUDENTIAL INSURANCE COMPANY OF AMERICA |
|---|---|
| Address: | PRUDENTIAL LEGAL TEAM, 2101 WELSH RD, DRESHER, PA 19025 |

You are hereby summoned to defend a civil action filed against you in the Chancery Court for Washington County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the required date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: August 18, 2016  at 2:40 PM

Sarah Lawson, Clerk and Master

By: _Sarah Lawson / RKH, DC_
Deputy Clerk and Master

Attorney for Plaintiff:   Laurel Ferrell
249 E Main Street
Johnson City, TN 37604

---

**NOTICE OF PERSONAL PROPERTY EXEMPTION**

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA §26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to execute it, you may wish to seek the counsel of a lawyer. Please state file number on list.

I, Sarah Lawson, Clerk and Master of the Chancery Court, Washington County Tennessee, hereby certify that this is a true and exact copy of the original _Civil Summons_ filed in this cause.

This the _18th_ day of _August_, 20_16_

_Sarah Lawson / RKH DC_
Sarah Lawson, Clerk and Master

Mail list to   Clerk & Master of Washington County, Chancery Court
George P. Jaynes Justice Center
108 W. Jackson Blvd., Ste. 2157
Jonesborough, TN 37659

OFFICER'S RETURN: Please execute this summons and make your return within ninety (90) days of issuance as provided by law.
I certify that I have served this summons together with the complaint as follows:

Date: _____   By: _____

RETURN ON SERVICE OF SUMMONS BY MAIL: I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.
Date: _____

_____
Deputy Clerk/Notary Public (Comm. Expires _____ )

_____      _____
Signature of Plaintiff                                       Plaintiff's Attorney (or Person Authorized to Serve Process)
**(Attach return receipt on back)**

I,_____, do hereby accept service of the within summons as though served by the Sheriff and acknowledge receipt of a certified copy of original complaint and summons.
This ___ day of _____, 20___, at ____o'clock __.M.   _____

_____
Signature and Address

*ADA: If you need assistance or accommodations because of a disability, please call ADA Coordinator, at (423) 788-1415*
*Rev. 8/05/10*

IN THE CHANCERY COURT FOR WASHINGTON COUNTY
IN JONESBOURGH, TENNESSEE

| | |
|---|---|
| BARBARA BREEDLOVE | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No.: 43864 |
| | ) |
| PRUDENTIAL INSURANCE COMPANY | ) |
| OF AMERICA | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, BARBARA BREEDLOVE, your Plaintiff, and files this action respectfully asking the Court to grant her relief and in support would state:

1. <u>Jurisdiction and Venue</u>. This Court has jurisdiction and venue over the parties as the cause of action arose in Washington County, Tennessee. Plaintiff is seeking damages in excess of $25,000.

2. <u>Parties</u>. Plaintiff, Barbara Breedlove, hereinafter referred to as Ms. Breedlove, is the insured and the beneficiary of a long-term disability insurance policy purchased by Ms. Breedlove. Defendant, The Prudential Insurance Company of America (hereinafter referred to as "Prudential"), the insurance company that issued the long-term disability policy purchased by Ms. Breedlove (hereinafter referred to as the "Policy"), conducts business in Washington County, Tennessee. Defendant, East Tennessee State University (hereinafter referred to as "ETSU"), Ms. Breedlove's employer during all relevant periods, is the policyholder and conducts business in Washington County, Tennessee.

FILED

AUG 18 2016

at 1:30 p.m.

Sarah Lawson, Clerk and Master

3. Ms. Breedlove has a long-term disability insurance policy with Prudential through her employer, ETSU under the Group Policy Number 50978 issued to the Tennessee Board of Regents, hereinafter referred to as the Policy.

4. The Policy provides that Claimant is disabled when Prudential determines that "you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and you are under the *regular care* of a *doctor*; and you have a 20% or more loss in your *monthly earnings* due to that sickness or injury. After 36 months of payments, you are disabled when Prudential determines that due to the same sickness or injury: you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and you are under the regular care of a doctor."

5. While employed at ETSU, Ms. Breedlove was treated by K. Ramsey McGowen, PHD. She began treatment for depression in 2009 and then again in 2012. Most recently, Ms. Breedlove started treatment again April 12, 2013 for depression after an incident at work.

6. At each session they would set goals. In the beginning the goals were simply to get her to a point where "return to work" could be a goal. As treatment progressed it became apparent that the severity of her depression would continue to prevent her from fulfilling her work obligations and "return to work" never became a goal.

7. As a result of her depression, Ms. Breedlove received short-term disability from Prudential. After the short-term disability was exhausted, with support from Dr. McGowen, she applied for long-term disability.

8. In denying Ms. Breedlove's claim for long term disability, Prudential relied on an Independent Medical Examination conducted in January 2015, which directly contradicted all

three of Ms. Breedlove's medical treatment providers' records stating Ms. Breedlove was unable to perform work related activities. Ms. Breedlove appealed the decision.

9. Ms. Breedlove's claim with Prudential is now final and cannot be appealed further with Prudential.

10. Social Security Disability Administration has made a determination that Ms. Breedlove is disabled and Ms. Breedlove is now receiving a disability check. A copy of the decision is attached to this complaint.

## COUNT I- BREACH OF CONTRACT

11. Plaintiff alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-10.

12. "In a breach of contract action, the plaintiff is responsible for proving "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006).

13. The Policy is an enforceable contract.

14. Nonperformance amounting to breach of contract on the part of the Defendants occurred when Defendants failed to pay Plaintiff's long term disability benefits.

15. Plaintiff has suffered damages in excess of $25,000 caused by Defendants breach of contract.

16. As a result of Defendants' actions in breaching the contract, Plaintiff is entitled to equitable relief in the form of specific performance, full restitution as a result of such actions, attorney fees and any other relief the Court deems appropriate to do justice between the parties.

## COUNT II- BAD FAITH

17. Plaintiff alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-10.

18. The policy of insurance has, by its terms, become due and payable; Plaintiff has made a formal demand for payment have been made; Plaintiff has waited 60 days after making demand before this filing suit, unless there was a refusal to pay prior to the expiration of the 60 days; and Defendants' refusal to pay is not in good faith.

19. Defendants' actions were egregious and accordingly Plaintiff seeks damages including consequential, mental and/or emotional stress damages, and, punitive damages in excess of $25,000.

## COUNT III- LTD PLAN BENEFITS

20. Plaintiff alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-10.

21. Plaintiff is entitled to certain benefits of the plan consisting of long term disability benefits including prejudgment interest, retroactive to the day benefits would have begun had the Defendant not denied her claim.

22. Plaintiff is entitled to the benefits identified herein because:

   a. the benefits are permitted benefits under the plan;

   b. Plaintiff has satisfied all conditions to be eligible to receive the benefits;

   c. Plaintiff has not waived or otherwise relinquished her entitlements to the benefits.

23. The Defendant has refused to pay Plaintiff's claim for benefits and refused to pay the benefits sought by the Plaintiff despite the medical records and the Social Security Administration's determination that Ms. Breedlove is disabled.

## COUNT IV: OTHER EQUITABLE RELIEF

24. Plaintiff alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-10.

25. The Plaintiff is entitled to other appropriate equitable relief including but not limited to prejudgment interest on past due disability benefits.

WHEREFORE, Plaintiff respectfully requests the following:

1. That proper process issue and be served on the Defendants.
2. That Defendant be required to answer or otherwise defend within the time provided by law.
3. That the Court find Defendants have breached the terms of the Policy.
4. That the Court find Defendants' breach of contract was in bad faith.
5. That the Court find that Defendants' actions on breaching the contracts were egregious and accordingly award Plaintiff damages including but not limited to specific performance, consequential, mental and/or emotional stress damages, and, punitive damages, and attorney fees.
6. That the Court award any other relief appropriate to do justice between the parties.

Respectfully Submitted,

*Barbara Breedlove*
BARBARA BREEDLOVE

By: _____
Laurel Farrell, BPR#: 29705
Attorney for Plaintiff
249 E Main Street
Johnson City, TN 37604
423-928-8321/423-928-2822(fax)

STATE OF TENNESSEE ~~——~~ *State of NC*
COUNTY OF WASHINGTON ~~——~~ ) *County of Buncombe*

BARBARA BREEDLOVE, having first been duly sworn according to law, makes oath that she has read the foregoing Complaint and that the facts set forth therein are true to the best of her knowledge, information and belief, and that her Complaint is not made out of levity or by collusion with the Defendant but in sincerity and truth for the causes mentioned therein.

*Barbara Breedlove*
BARBARA BREEDLOVE

Sworn to and subscribed before me this the 3rd day of May, 2016.

*Kimberly Hensley-Hunter*
NOTARY PUBLIC

My Commission Expires: 07-31-2020

[Notary Seal: Kimberly Hensley-Hunter, Notary Public, Buncombe County, NC]

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Barbara Breedlove (Claimant) | Period of Disability and Disability Insurance Benefits |
| (Wage Earner) | 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 (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated February 23, 2015 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on April 1, 2016, in Kingsport, Tennessee. Ms. Donna Bardsley, an impartial vocational expert, also appeared and testified at the hearing. The claimant is represented by Laurel Farrell, an attorney.

The claimant is alleging disability since April 11, 2013.

The undersigned notes that it appears that the record is complete because the claimant and her representative have not indicated that there is any further evidence to submit in relation to this claim.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2018. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from April 11, 2013, through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.



## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do her past relevant work, the

See Next Page

claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant's date last insured is December 31, 2018.**

**2. The claimant has not engaged in substantial gainful activity since April 11, 2013, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

**3. The claimant has the following severe impairments: major depressive disorder and anxiety (20 CFR 404.1520(c)).**

The undersigned notes that an impairment is considered severe if it significantly limits one's physical or mental ability to do basic work activities. Following a review of the evidence of record, the undersigned finds that the above noted impairments meet this standard and are therefore severe.

The claimant also alleged disability, in part, due to a heart defect that was diagnosed when she was in college. She stated that prior to having surgery she was unable to breathe properly and she had extreme fatigue. However, the claimant testified that she had surgery in 2012 at which time her symptoms abated and she no longer had problems. The undersigned notes that the claimant filed her application for disability benefits in April 2013. Therefore, the undersigned finds that the claimant does not have any functional limitations related to a heart defect and it is nonsevere.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**



The undersigned notes that an impairment is considered severe if it significantly limits one's physical or mental ability to do basic work activities. Following a review of the evidence of record, the undersigned finds that the above noted impairments meet this standard and are therefore severe.

The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has a substantial loss in the ability to perform at least one of the basic mental demands for unskilled work, which requires understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-6p and 06-3p.

Medical records show that the claimant received psychiatric medication from her primary care provider at FirstChoice Family Practice. In addition, the claimant has attended therapy with Dr. Ramsey McGowen at ETSU Department of Psychiatry. Records shows that despite counseling and medications, the claimant continued to experience moderate to severe depression. Dr. McGowen diagnosed major depression, recurrent, severe, without psychosis and she assessed a Global Assessment of Functioning (GAF) of 40. In addition, Dr. McGowen advised that the claimant demonstrated seven of the diagnostic criteria and partially meets an eighth, exceeding the required five symptoms for the diagnosis and she reported that the claimant had both marked occupational impairment and social impairment. In July 2013, the claimant began medication management with Dr. Merry Miller at ETSU Department of Psychiatry, who continued to adjust her medications. Dr. McGowen reported that the claimant continued to experience pronounced limitations in functioning while in a relatively safe and protected environment. It was noted that the claimant had a very low tolerance for stress and her functional level decompensated with minimal stress and she frequently withdrew from social situations. On April 25, 2014, Dr. McGowen noted that the claimant's situational stressors had continued to diminish; however, her concentration was still reduced and she continued to be hyper-somnolent. Dr. McGowen assessed that the claimant was unable to handle social situations, she could not mange her life without enormous support from others, and she currently lacks the ability to handle stress, which prevents the claimant from fulfilling the duties of her position. Despite continued therapy and

See Next Page

medication management by Drs. McGowen and Miller, the claimant's depression has remained moderate to severe (Exhibit 2F, 3F, 6F, 10F, 11F, 12F, 13F, 18F, & 19F).

On October 19, 2015, Dr. McGowen submitted a statement advising that the claimant had not done well and she continued to experience serious depression, including suicidal ideations. Despite medication changes, there has not yet been any significant improvement. She noted that the claimant was emotionally vulnerable and only feels safe when with her wife. Dr. McGowen reported that the claimant avoids social activity, has low energy, stays in bed all day on some days, and no longer experiences pleasure from things that she used to enjoy (e.g. her pets, activity with friends). Dr. McGowen reported that the claimant lacks the clarity of thought, the motivation and energy and the personal drive that characterized her previous job performance. She advised that the claimant's depression was so severe at the present time for the claimant to undertake her previous positions and it was Dr. McGowen's opinion that there were no positions that the claimant could hold given her level of depression (Exhibit 7F).

On March 10, 2015, Dr. McGowen submitted a medical source statement opining that the claimant had a poor ability to deal with the public, use judgment, deal with work stresses, and maintain attention/concentration; a fair ability to relate to co-workers, interact with supervisors, and function independently; and a good ability to follow work rules. She assessed that the claimant had a fair ability to understand, remember, and carry out complex job instructions and she had a good ability to understand, remember, and carry out detailed and simple instructions. Dr. McGowen further opined that the claimant had a fair ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability and she had a good ability to maintain personal appearance (Exhibit 16F).

On March 12, 2015, Dr. Merry Miller submitted a medical source statement opining that the claimant had poor or no ability to follow work rules, deal with the public, use judgment, interact with supervisor(s), deal with work stresses, function independently, and maintain attention/concentration and a fair ability to relate to co-workers. To support these findings, Dr. Miller noted that the claimant struggled with severe depression which causes poor sleep, memory and concentration problems, irritability, fatigue, and difficulty functioning in a work setting. She stated that the claimant could not possibly function in a work setting at this time as she was stressed by the interpersonal demands of a work setting. Dr. Miller reported that the claimant was so depressed that she could not get out of bed some days and she would unlikely be able to follow directives or function in a work setting. She further assessed that the claimant had poor or no ability to understand, remember, and carry out complex, detailed, and simple job instructions. Dr. Miller supported these findings by stating that the claimant's ability to concentrate and organize her thinking was impaired by her depression and she was no longer able to remember what she read. Dr. Miller opined that the claimant would have poor to no ability to behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability and she had a good ability to maintain personal appearance. She described that the claimant had become severely depressed, she cries frequently, and she was no longer able to follow through on social plans. Dr. Miller reported that the claimant was unable to manage her emotions, cope with stress, or handle interpersonal relationships as would be required in a work setting and she opined that the claimant was incapable of performing at her previous level (Exhibit 17F).



Dr. Chad Sims saw the claimant for a consultative psychological evaluation on July 16, 2014. The claimant was alert and oriented, her mood was depressed and tense, and she displayed a restricted range of affect. Dr. Sims noted that the claimant displayed some measure of psychomotor retardation and he observed that the she was tearful at times. On mental status evaluation, she was able to recall three of three items immediately and three of three items after a three-minute delay. She completed Serial 3 subtractions from 20 successfully; however, she struggled somewhat in the Digit Span backwards test. She was able to spell the word "world" correctly both forwards and backwards and she appeared to follow instructions, both written and spoken. Dr. Sims diagnosed a major depressive disorder, recurrent, moderate, with anxious distress, mild and an unspecified anxiety disorder (rule out panic disorder). He assessed that the claimant showed evidence of a moderate impairment in social relating. He opined that the claimant showed at least a mild impairment in her ability to sustain concentration and to adapt to change (Exhibit 5F).

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally consistent with the evidence of record.

The undersigned gives great weight to the opinions of Drs. Miller and McGowen as they are treating sources and their opinions are consistent with evaluations and treatment. In addition, Pursuant to SSR 96-5p, although Drs. McGowen and Miller's opinion that there is no employment the claimant is capable of performing is an administrative findings reserved for the Commissioner, the undersigned finds that this opinion is supported by the evidence of record as a whole and is therefore given great weight.

The undersigned notes that according to the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th Edition, GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. In this case, the GAF score assessed is consistent with the evaluations and opinions of Drs. Miller and McGowen and is therefore given great weight.

The undersigned gives little weight to the opinion of Dr. Sims as he is a one-time examiner and his opinion is not consistent with other medically acceptable clinical findings.

The State agency psychological consultants' mental assessments have been given little weight because they are not well supported by medically acceptable clinical findings and are inconsistent with the medical record, much of which was received after their determinations. The undersigned has determined the claimant's residual functional capacity based on the totality of the evidence, including her testimony at the hearing.

However, the State agency medical consultants' physical determinations that the claimant did not have a severe physical impairment have been given great weight because they are consistent with the record as a whole.

6. **The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a coach and an associate athletic director which were skilled vocationally and required sedentary to heavy exertion. The demands of the claimant's past relevant work exceed the residual functional capacity.

**7. The claimant was an individual of advanced age on the established disability onset date (20 CFR 404.1563).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).**

At the hearing, the vocational expert testified that the claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above. The undersigned finds the testimony of the vocational expert to be acceptable.

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors there are no jobs in the national economy that the individual could perform.



Based on the testimony of the vocational expert, the undersigned concludes that the claimant is unable to make a successful vocational adjustment to work that exists in significant numbers in

the national economy. A finding of "disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11. The claimant has been under a disability as defined in the Social Security Act since April 11, 2013, the alleged onset date of disability (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on February 4, 2014, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since April 11, 2013.

/s/ *Charles R. Howard*

Charles R. Howard
Administrative Law Judge

April 11, 2016
Date



US POSTAGE PITNEY BOWES
ZIP 37243 $ 007.57
0000369983 AUG 26 201

7015 0640 0004 8513 0325

Business Services Division
etary of State Tre Hargett

State of Tennessee
R‍osa L. Parks Avenue, 6th Floor
‍ashville, Tennessee 37243-1102

PRUDENTIAL INS. COMPANY OF AMERICA
2101 WELSH RD
: PRUDENTIAL LEGAL TEAM
DRESHER, PA 19025-5000

Carol Herceg